UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANA N. ELVIDGE,<br><br>                Plaintiff,<br><br>   -vs-<br><br>CAROLYN W. COLVIN, Commissioner<br>of Social Security,[1]<br><br>              Defendant. | No.   CV-12-575-WFN<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

      Before the Court are cross-Motions for Summary Judgment (ECF Nos. 12 and 13). Attorney Rebecca Coufal represents Plaintiff.  Special Assistant United States Attorney Leisa Wolf represents Defendant.  The Court has reviewed the administrative record and briefs filed by the parties and is fully informed.

## JURISDICTION

      Plaintiff protectively applied for disability insurance benefits (DIB) and supplemental security income (SSI) on January 30, 2007, alleging disability beginning on August 31, 1985, due to physical and mental impairments.[2]  The application was denied initially and on reconsideration.

---

     [1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

     [2]Plaintiff no longer claims SSI.  *See* ECF No. 12 at 1 n.1.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 1

A hearing was held before Administrative Law Judge (ALJ) Gene Duncan on January 28, 2009. The ALJ found that Plaintiff only met the insured status requirements necessary to receive DIB between August 31, 1985 and December 31, 1990. The ALJ concluded that Plaintiff was not disabled during this time period. The Appeals Council denied Plaintiff's request for review and Plaintiff appealed the ALJ's decision to the United States District Court for the Eastern District of Washington. The Court granted Plaintiff's Motion for Summary Judgment and remanded for additional proceedings. (Tr. at 612-36.)

A second hearing was held before ALJ Gene Duncan on January 13, 2012. At the hearing, Plaintiff, represented by counsel, testified as did Scott Elvidge, Plaintiff's husband, Dr. Charles Wiseman, a medical expert, Kent Layton, Ph.D., a medical expert, and Jinnie Lawson, a vocational expert (VE). The ALJ again concluded that Plaintiff was not disabled between August 31, 1985 and December 31, 1990. The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. The instant matter is before this Court pursuant to 42 U.S.C. § 405(g).

## FACTS

The facts of the case are set forth in detail in the transcript of the proceedings and are briefly summarized here.

At the time of the second hearing, Plaintiff was 47 years old. (Tr. at 524.) In high school, Plaintiff received vocational training as a dental assistant. (Tr. at 513.) Plaintiff worked in a dental office for a period of time in the early to mid-1980s. (Tr. at 34-35). Around this time, Plaintiff states that she suffered from migraine headaches, an inflammatory disease, and fibromyalgia. (Tr. at 35.)

She stopped working at the dental office in 1985 because her first husband died unexpectedly. (Tr. at 526.) At the time of her husband's death, Plaintiff was pregnant with the couple's child. (Tr. at 35.) After the birth of the child, Plaintiff began experiencing flu-ike episodes with symptoms including fever, severe congestion, sore throat, and body aches. (Tr. at 527.) These symptoms would diminish in two to three weeks but would reoccur every six weeks or so. (Tr. at 528.) Plaintiff's reoccurring flu symptoms have

never gone away, but the duration and intensity of the symptoms have diminished over time. (Tr. at 528.)

Plaintiff complains of intense migraine headaches that can last for a day or longer. (Tr. at 520.) Plaintiff has experienced migraines since childhood. (Tr. at 525.) Plaintiff has used a "plethora" of medications to treat her migraines, but she has not responded well to any of them. (Tr. at 521-23.) While having a migraine, Plaintiff cannot read or "stand any amount of light" without becoming nauseous. (Tr. at 523.)

At the time of the hearing, Plaintiff reported spending much of her time at home. (Tr. at 513.) From home, she works as an employee for her husband's business, but does little more than answer the phone, send a fax, look up an address or telephone number once or twice a week, and provide "moral support." (Tr. at 513, 565.) Plaintiff reports having difficulty with even light household chores. (Tr. at 515). Plaintiff also has difficulty sleeping. (Tr. at 517-18.) Plaintiff enjoys art and can occasionally paint for short periods of time. (Tr. at 517.)

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th 2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 3

**ADMINISTRATIVE DECISION**

Preliminarily, the ALJ noted that Plaintiff was only eligible for DIB between August 31, 1985 and December 31, 1990.

At step one, the ALJ determined that Plaintiff engaged is substantial gainful activity since March 2010 when she started doing secretarial work for her husband's business. Prior to March 2010, however, the ALJ found that Plaintiff did not engage in substantial gainful activity for a continuous 12-month period.

At step two, the ALJ found that Plaintiff had the following severe impairment: Headaches. The ALJ concluded that Plaintiff's complaints of fibromyalgia and chronic fatigue syndrome were not medically determinable impairments and not severe.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments described at 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

At step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform sedentary work subject to numerous limitations. The ALJ found that claimant had no past relevant work.

At step five, the ALJ concluded that, given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including work as a document preparer, telephone quotation clerk, and cashier.

**STANDARD OF REVIEW**

In *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo. Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. [*Tackett*, 180 F.3d at 1097]. Substantial evidence is defined as being more than a mere scintilla, but

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 4

less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the ALJ did not apply the proper legal standards in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ISSUES

1. Did the ALJ err in assessing Plaintiff's credibility?

2. Did the ALJ err in assessing the testimony of lay witnesses?

3. Did the ALJ err by posing an incomplete hypothetical to the VE?

## DISCUSSION

### 1.  Did the ALJ err in assessing Plaintiff's credibility?

Plaintiff argues that the ALJ erred by rejecting Plaintiff's testimony about the severity of her symptoms without providing specific, clear, and convincing reasons for doing so. ECF No. 12 at 16. The Court declines to reach the merits of this argument

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 5

because this Court previously concluded that the ALJ did not err in assessing Plaintiff's credibility.

Under the law of the case doctrine, a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case. *Jefferies v. Wood*, 114 F.3d 1484, 1488-89 (9th Cir. 1997); *see also Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) (principles of res judicata apply to administrative decisions, including social security appeals).  Despite the law of the case doctrine, this Court may reconsider a previously decided issue if "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Jefferies*, 114 F.3d at 1489 (footnote omitted) (internal quotation marks omitted).

Plaintiff fails to assert an exception to the law of the case doctrine that would require the Court to reconsider an issue previously decided in this case.  On the first appeal, Plaintiff made an identical argument, i.e., the ALJ "erred in not finding [Plaintiff's] testimony credible." (CV-09-00338-CI, ECF No. 15 at 22.)   This Court disagreed, however, and upheld the ALJ's credibility assessment finding it "based on clear and  convincing reasons supported by substantial evidence." (Tr. at 629.)  In particular, the Court found that the ALJ reasonably "infer[red] [that] Plaintiff's sporadic doctor visits indicate[d] that her symptoms were not as disabling as alleged." (Tr. at 628-29.) On remand, the ALJ again found Plaintiff not credible to the extent that Plaintiff's alleged limitations contradicted the ALJ's RFC determination.  (Tr. at 427.)  The ALJ relied on the fact that this Court had affirmed his previous credibility determination. (Tr. at 427.)   Plaintiff provides no reason why the ALJ should have reevaluated Plaintiff's credibility in the second administrative hearing after this Court had found the assessment free of error and supported by substantial evidence.   The ALJ's reliance on this Court's previous opinion was not in error; the ALJ did not err in assessing Plaintiff's credibility.

**2.   Did the ALJ err in assessing the testimony of lay witnesses?**

Plaintiff next argues that the ALJ erred in assessing the testimony of lay witnesses, particularly the testimony of her husband.  The lay witness testimony in this case consists of the written statements of Plaintiff's mother, father, aunt, and uncle, and the testimony of Plaintiff's husband at the second administrative hearing.  In the ALJ's first decision, the ALJ gave the written statements little weight because (1) the close family relationship between Plaintiff and the witnesses, (2) the statements were made well after the expiration of Plaintiff's insured status, and (3) the statements were not consistent with Plaintiff's activities and the medical evidence. (Tr. at 16.)  On appeal, this Court concluded that the ALJ did not give germane reasons for rejecting the lay witness testimony and ordered the ALJ to "reconsider the witness statements on remand." (Tr. at 633.)

**a.  Statements of Plaintiff's mother and father**

Carol Payne, Plaintiff's mother, and Frank Payne, Plaintiff's father, both submitted written statements in support of Plaintiff's claim for DIB.

In his written statement, Mr. Payne notes that Plaintiff was often sick as a child, suffering from "aches and pains," "headaches," "flu-like symptoms," "muscle pain," and "fatigue."  (Tr. at 219.)  Mr. Payne lists several doctors from whom Plaintiff sought treatment. (Tr. at 219-20.)  Mr. Payne reports that Plaintiff was unable to return to work after the birth of her first child, even though she wanted to. (Tr. at 220.)  After discussing Plaintiff's more recent debilitating ailments and medical treatment, Mr. Payne opines Plaintiff's "disabling bouts" make it so she is unable to "give her attention to work or other activities on a continuous basis" or to "hold a regular job." (Tr. at 220.)

Mrs. Payne also reports how Plaintiff suffered from numerous ailments as a child that prevented Plaintiff from participating in normal childhood activities.  (Tr. at 221.)  Mrs. Payne describes additional ailments suffered by Plaintiff as she grew up and some of the medical treatment Plaintiff received.  (Tr. at 221-22.)  Mrs. Payne recounts her personal observations of Plaintiff suffering from fibromyalgia, migraine headaches, recurrent flu episodes, mononucleosis, hepatitis, and breast cancer. (Tr. at 222.)  Mrs.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 7

Payne concludes that Plaintiff has a "weak and deficient immune system" and notes that Plaintiff is often disabled, "bed-ridden," and needs help with the "basic routines of life." (Tr. at 222.)

In the ALJ's second decision, the ALJ summarized and reconsidered these statements, but again gave them little weight. The ALJ, quoting this Court's earlier opinion, reasoned that the statements of Mr. and Mrs. Payne "simply cannot establish disability without the support of underlying medical evidence." (Tr. at 429.) The ALJ went on to conclude that, "[b]ecause the objective medical evidence does not establish chronic fatigue syndrome, fibromyalgia, or any other impairment except for headaches during the time period relevant to the decision, the [Plaintiff's] parents' statements that those conditions existed at the time are essentially moot." (Tr. at 429.)

It is true that lay witness testimony cannot establish the existence of medically determinable impairments. But lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006); 20 C.F.R. § 404.1513(d)(4); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). Simply stating that the lay witness testimony does not objectively establish a medically determinable impairment is not a germane reason for rejecting lay witness testimony that concerns a claimant's ability to work. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (stating that the ALJ "should not have discredited [a lay witness's] testimony on the basis of its relevance or irrelevance to medical conclusions."). The ALJ did not give germane reasons for rejecting the parents' opinions regarding Plaintiff's *ability to work*. On remand, the ALJ should credit Plaintiff's parents' testimony or give germane reasons for rejecting it.

### b. Statements of Plaintiff's aunt and uncle

Bill Payne, Plaintiff's uncle, and Judith Ott-Bryant, Plaintiff's aunt, also submitted written statements in support of Plaintiff's claim for DIB.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 8

Plaintiff's uncle's statement primarily addresses his own health issues "surrounding [his] afflictions of fibromyalgia and osteoarthritis." (Tr. at 223.) He also mentions that other family members, including Plaintiff, suffer from "similar afflictions." (Tr. at 223.) Likewise, Ms. Ott-Bryant describes her own ailments (which bear some resemblance to Plaintiff's) and suggests that her family has a hereditary "inflammatory and autoimmune disease dysfunctional condition." (Tr. at 224.) Ms. Ott-Bryant notes that "these chronic conditions began to affect [Plaintiff] from a much earlier age." (Tr. at 224.)

In the ALJ's second decision, the ALJ summarized and reconsidered these statements and again assigned the statements little weight. The ALJ reasoned that the statements made by Plaintiff's aunt and uncle deserved little weight because they "primarily discuss their own impairments, are not provably based on observations of behavior during the relevant time period, and do not expand on the amount of contact they had with the [Plaintiff]." (Tr. at 428.) The Court agrees that these statements provide no information on Plaintiff's ability to work during the pertinent time period. The ALJ gave germane reasons for giving little weight to the opinions of Plaintiff's aunt and uncle.

### c. Testimony of Scott Elvidge

Scott Elvidge, Plaintiff's husband, testified at the second administrative hearing. (Tr. at 562-79.) Mr. Elvidge married Plaintiff in 1987. Around that time, Mr. Elvidge stated that Plaintiff suffered migraines two to three times a month with each headache lasting "[a] few days at a time." (Tr. at 563.) During these migraines, Plaintiff would vomit and need to lie down in a dark room. (Tr. at 563.) Since 1987, Mr. Elvidge believes that Plaintiff's health problems have "[g]otten worse." (Tr. at 566, 570.) Mr. Elvidge emphasized that when Plaintiff has a migraine she can't perform daily chores or do anything other than lie in bed or on the couch. (Tr. at 577.) Mr. Elvidge testified that Plaintiff is rendered completely incapacitated for two weeks out of every month due to a combination of headaches and flu symptoms. (Tr. at 575.) Although Plaintiff is technically an employee of Mr. Elvidge's company, she spends less than five hours a week actually assisting in business matters. (Tr. at 566.)

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 9

1    In the ALJ's second decision, the ALJ fails to mention or address Mr. Elvidge's

2 testimony.  Lay witness testimony "cannot be disregarded without comment."  *Bruce*, 557

3 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)).  Mr.

4 Elvidge's testimony directly addresses Plaintiff's ability to work during the relevant time

5 period.  If the ALJ had found Mr. Elvidge's testimony credible, it would not be a stretch to

6 find that Plaintiff's impairments prohibited her from working.  Significantly, Defendant

7 fails to respond to Plaintiff's argument that the ALJ erred by not considering Mr. Elvidge's

8 testimony.  On remand, the ALJ must credit Mr. Elvidge's testimony or provide germane

9 reasons for rejecting it.

10    **3.  Did the ALJ err by posing an incomplete hypothetical to the VE?**

11    Plaintiff argues that the ALJ's hypothetical question to the VE did not include all of

12 Plaintiff's limitations.  The Court agrees and finds that the ALJ's hypothetical question was

13 flawed in two respects.

14    First, the ALJ's hypothetical question did not account for all the limitations opined

15 by the medical experts in this case.  "Hypothetical questions posed to the [VE] must set out

16 all the limitations and restrictions of the particular claimant."  *Embrey v. Bowen*, 849 F.2d

17 418, 422 (9th Cir. 1988).  An ALJ is not required to present the VE with those limitations

18 he finds to be incredible and unsupported by the evidence.  *Osenbrock v. Apfel*, 240 F.3d

19 1157, 1165-66 (9th Cir. 2001).

20    The medical evidence in this case concerning the relevant time period is sparse.  In

21 developing his hypothetical questions to the VE, the ALJ appeared to rely exclusively on

22 the testimony of the medical experts. The ALJ, however, took liberty in characterizing

23 certain limitations opined by the medical experts.  For example, Dr. Wiseman testified that

24 Plaintiff could "maybe sit for 30 minutes, but she might have to get up and move around."

25 (Tr. at 584.)  But in the ALJ's hypothetical to the VE, he described a person who was able

26 to "sit for eight hours a day," but who would need "to stand and stretch for one to three

27 minutes every hour that she does not have a break." (Tr. at 596.)   This is a

28 mischaracterization of the medical expert's opinion and a limitation unsupported by

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 10

substantial evidence. An ALJ may not "substitute his own layman's opinion for the findings and opinion of a physician." *Gonzalez Perez v. Secretary of Health & Human Servs.*, 812 F.2d 747, 749 (1st Cir. 1987). The ALJ also failed to include additional limitations opined by Dr. Wiseman including the need for Plaintiff to work away from vibrations and in a quiet location, Tr. at 584, and Plaintiff's "need to lie down and avoid bright lights" when suffering from a migraine, Tr. at 585. There is no indication that the ALJ found these limitations incredible or unsupported by the evidence; therefore, the ALJ erred in excluding them from his hypothetical question.

Second, the ALJ's hypothetical question did not account for the limitations opined by Plaintiff's husband and parents. An ALJ poses an incomplete hypothetical when the ALJ does not include limitations recounted by a lay witness who's testimony the ALJ did not properly consider. *See Bruce*, 557 F.3d at 1116 (ALJ erred by failing to incorporate into hypothetical question limitations recounted by claimant's wife (whom the ALJ found "generally credible")); *Nguyen*, 100 F.3d at 1467 (holding that an ALJ errs by "failing to include in the hypothetical the physical manifestations that were described by the witnesses or expressly rejecting the testimony for legitimate reasons.").

Mr. Elvidge opined that, during the relevant period, Plaintiff had headaches two to three times a month with each headache lasting "[a] few days at a time." (Tr. at 563.) During these episodes, Plaintiff was essentially bed-ridden. (Tr. at 563.) Plaintiff's parents' statements are consistent with Mr. Elvidge's testimony. Notwithstanding Mr. Elvidge's testimony, the ALJ included the following limitation in his hypothetical question: Plaintiff "would be away from . . . her job and not working two hours per week. Still would be on the premises but she would not be working two hours a week." (Tr. at 596.) It is unclear how the ALJ came up with this limitation; neither Dr. Layton nor Dr. Wiseman stated that Plaintiff would be unable to work for two hours a week. In fact, Dr. Layton opined that when Plaintiff had a migraine "she would not be able to work." (Tr. at 533.) The limitations recounted by Mr. Elvidge would result in Plaintiff being absent from work at least several days each month. When Plaintiff's attorney asked the VE whether

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 11

1    Plaintiff could perform any type of work if she missed one day of work per week or even a

2    half day per week, the VE responded that Plaintiff would not be able to work. (Tr. at 601.)

3       The ALJ's hypothetical question to the VE did not accurately reflect Plaintiff's

4    limitations established by the testimony of the medical experts and lay witnesses. Thus, the

5    ALJ's determination at step five that Plaintiff could perform other work existing in the

6    national economy does not rest on substantial evidence.

7    **REMEDY**

8       The decision whether to remand for further proceedings or reverse and award

9    benefits is within the discretion of the district court. *McAlliser v. Sullivan*, 888 F.2d 599,

10   603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful

11   purpose would be served by further administrative proceedings, or where the record has

12   been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d

13   1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly

14   burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). This policy is based

15   on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are

16   outstanding issues that must be resolved before a determination can be made, and it is not

17   clear from the record that the ALJ would be required to find a claimant disabled if all the

18   evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379

19   F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir.

20   2000).

21      In this case, the Court finds that the record is unclear as to whether the ALJ would

22   be required to find Plaintiff disabled if all the lay witness testimony was properly

23   evaluated and the VE was presented with a hypothetical question that includes all the

24   limitations that the ALJ finds credible and supported by substantial evidence. It is

25   conceivable that, if the ALJ gives germane reasons for rejecting the statements of

26   Plaintiff's mother and father and the testimony of Plaintiff's husband, then the ALJ would

27   have a proper basis to conclude that Plaintiff is not disabled. Although this is the second

28   remand of this case, and further proceedings would no doubt be inconvenient, the Court

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 12

does not believe that further proceedings would not "unduly burdensome."  Plaintiff's potential recovery is limited to a fixed amount of DIB earned over 20 years ago. Furthermore, Plaintiff's condition does not appear to be significantly worsening and her financial situation does not appear to be dire.   Therefore, the Court finds that the appropriate remedy in this case is remand.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is based on legal error and unsupported by substantial evidence.  Accordingly,

**IT IS ORDERED** that:

1.   Plaintiff's Motion for Summary Judgment, filed April 22, 2013, **ECF No. 12**, is **GRANTED**.

2.   Defendant's Motion for Summary Judgment, filed June 3, 2013, **ECF No. 13**, is **DENIED**.

3.   This matter is **REMANDED** to the ALJ.  On remand the ALJ shall reconsider the statements of Plaintiff's parents and evaluate the testimony of Plaintiff's husband. After evaluating the lay witness testimony, the ALJ must pose a hypothetical question to the VE that includes all of Plaintiff's limitations and restrictions that the ALJ finds credible and supported by substantial evidence.

4.   **JUDGMENT** shall be entered for the Plaintiff.

The District Court Executive is directed to file this Order and provide copies to counsel and to **CLOSE** the file.

**DATED** this 2nd day of December, 2013.


_____
            s/ Wm. Fremming Nielsen
            WM. FREMMING NIELSEN
11-22-13        SENIOR UNITED STATES DISTRICT JUDGE


ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 13